**GILMORE v. LUMBERMEN'S RECIPROCAL ASS'N.   (No. 887—4151.)**

(Commission of Appeals of Texas, Section A.  · March 23, 1927.)

1. **Master and servant** ⟐⟐385(11¼)—One-eyed employee, suffering loss of other eye, is entitled to compensation only for loss of one eye (Workmen's Compensation Law [Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—18, 5246—21, 5246—24]).

Under Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—24), employee who had lost sight of one eye in accident during childhood may recover for injury occasioning loss of sight of other eye, only compensation allowed under articles 5246—18 and 5246—21 for total and permanent loss of sight of one eye and is not entitled to total permanent disability.

2. **Master and servant** ⟐⟐401—Employer need not plead matters relieving it of liability for compensation for total disability where pleaded by employee (Workmen's Compensation Law [Vernon's Ann. Civ. St. Supp. 1918, art. 5246—24]).

Where plaintiff, in suit for compensation for permanent total disability, pleaded facts showing that he had lost sight of one eye during childhood and received injury during employment occasioning loss of other eye, it was unnecessary that defendant plead such facts nor plead particular provision of Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—24) which would relieve it of liability for compensation for total permanent· disability.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Proceeding under the Workmen's Compensation Law by C. K. Gilmore, claimant, opposed by the D. W. Downey Lumber Company, employer, and the Lumbermen's Reciprocal Association, insurer.   Judgment for claimant on appeal from a ruling of the Industrial Board was reversed and rendered

---

by the Court of Civil Appeals (258 S. W. 268), and claimant brings error. Affirmed.

Henderson & Bolin, of Daingerfield, and King, Mahaffey & Wheeler, of Texarkana, for plaintiff in error.

S. J. Thomas, E. J. Fountain, Jr., and Andrews, Streetman, Logue & Mobley, all of Houston, for defendant in error.

BISHOP, J. On a former submission of this cause an opinion was written by Judge W. R. Chapman, then a member of this section of the Commission of Appeals. His opinion is as follows:

"Plaintiff in error entered the employment of D. W. Downey Lumber Company after having lost the sight of one eye in an accident during his childhood. During his employment he received an injury in which he lost the sight of the other eye. The lumber company carried insurance on its employees with defendant in error. The State Industrial Accident Board allowed plaintiff in error the compensation allowed under the Workmen's Compensation Law for the loss of one eye; that is, 60 per cent. of his average weekly wage for 100 weeks, which amount was paid to plaintiff in error by defendant in error. Plaintiff in error applied to the Industrial Accident Board for further compensation to the extent of that allowed for permanent total disability, which was refused, and plaintiff in error brought this suit, and in the district court was granted compensation for permanent total disability, which was reversed and rendered by the Court of Civil Appeals at Texarkana. 258 S. W. 268. Portions of the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918) are:

"Article 5246—18: 'While the incapacity for work resulting from injury is total, the association shall pay the injured employee a weekly compensation equal to sixty per cent. of his average weekly wages but not more than $15.00 nor less than $5.00, and in no case shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of the injury.'

"Part of article 5246—21: 'For the total and permanent loss of the sight of one eye 60 per cent. of the average weekly wages during 100 weeks.'

"Article 5246—24: 'If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury.'

"When several of the states first enacted the Workmen's Compensation Law, such laws did not contain a provision similar to article 5246—24 of the Texas statute, and then followed a period of litigation as to whether, under statutes similar to the Texas workmen's compensation statutes, with article 5246—24 omitted, in cases where the facts were similar to the facts in this case, the employee was entitled to compensation for permanent total disability, or for compensation for the injury received as though there had been no previous injury, and the appellate courts of several states held that

the employee would be entitled only to compensation for partial disability, but most of them held that he would be entitled to compensation for permanent total disability. Then followed enactments of legislation in several of the states similar to our article 5246—24, and the first case that we find construing such legislation is from Minnesota (State ex rel. Garwin v. District Court of Cass County et al. [129 Minn. 156], 151 N. W. 910), from which we quote as follows:

"'No doubt in the enactment of the statute, and in providing for relief in cases of this kind, the Legislature had in mind the fact that persons suffering from permanent partial disability would seek such employment as their remaining ability would fit them to discharge, and express provision was made in the statute to protect the employer from liability for injuries received by an employee before entering his service. And to this end section 15 of the act was incorporated therein. That section provides: "If an employee receive an injury, which, of itself, would only cause permanent partial disability, but which, combined with a previous disability, does in fact cause permanent total disability, the employer shall only be liable for the permanent partial disability caused by the subsequent injury."

"'The language of the statute is clear and unambiguous, and clearly was intended to limit the liability of the employer to compensation commensurate with the injury suffered by the employee while in his service, and to relieve him from the consequences of injuries previously sustained even though both resulted in permanent total disability. From the viewpoint of the Legislature, and the fact that the liability created is founded upon no wrong of the employer, it would seem fairly clear that this limitation upon the liability was deliberately made, and founded in justice and fairness. The employer accepts in his service a disabled employee, knowing of the disability and with the knowledge that under the compensation statute he is liable for accidental injuries to such employee while engaged in his service, but to couple the prior disability with one suffered while in his service and make the employer liable for both, would seem a hardship the Legislature intended to avoid. At least we think the language of the statute clearly manifests that intention. The statute is too plain to admit of any other view, and there is no room for judicial construction. While it is true that the combined injuries result in total disability, the statute declares that as to the last employer it shall be treated as a partial disability. That the Legislature had the right to so provide cannot well be questioned. And, though the statute is remedial in the broadest sense of the term, to be liberally construed, the court is without power or authority to change the plain language thereof by construing it to mean the reverse of what is clearly stated therein.'

"In the recent Indiana case of Calumet Foundry & Machine Co. v. Mroz [80 Ind. App. 619] 141 N. E. 883, wherein the three articles corresponding to the three articles of the Texas statutes stated at the beginning of this opinion are as follows:

"'Where the injury causes total disability for work, there shall be paid to the injured employee during such total disability, but not

including the first seven (7) days thereof, a weekly compensation equal to fifty-five per cent. (55%) of his average weekly wages for a period not to exceed five hundred (500) weeks' [Acts 1917, c. 81, p. 227, § 2].

" 'For the permanent loss of the sight of an eye or its reduction to one-tenth of normal vision with glasses one hundred and fifty weeks, and for any other permanent reduction of the sight of an eye compensation shall be paid for a period proportionate to the degree of such permanent reduction' [Acts 1919, c. 57, p. 162].

" 'If an employee has sustained a permanent injury in another employment than that in which he received a subsequent permanent injury by accident, such as specified in section 31, he shall be entitled to compensation for the subsequent injury in the same amount as if the previous injury had not occurred' [Acts 1915, c. 106, p. 401, § 33]

—the precise question under consideration in the instant case was discussed as follows:

" 'Section 33 expressly, and in unmistakable language, provides that, if an employee had previously sustained "a permanent injury in another employment than that in which he received a subsequent permanent injury by accident," then and in that event such employee shall receive compensation "for the subsequent injury in the same amount as if the previous injury had not occurred." In the instant case, appellee had lost the sight of his left eye 17 years before, in another employment, and the compensation to be awarded him must be the same as if the previous injury had not occurred; that is, for 150 weeks as provided by clause (f). The language of section 33 is clear and unambiguous, and must be held to mean what it plainly expresses. There is no room for construction.'

"The following extract from State Industrial Commission v. Newman et al. [222 N. Y. 363] 118 N. E. 794, discloses the reason given by the Court of Appeals of New York for the enactment of a statute very similar to the Texas article 5246—24:

" 'In November, 1915, we decided that a claimant, who became an employee under the act, having theretofore lost a hand, became entitled, upon the loss of the remaining hand while such employee, to the compensation for permanent total disability, and not to the lesser compensation for permanent partial disability. Matter of Claim of Schwab v. Emporium F. Co., 216 N. Y. 712, 111 N. E. 1099. Our decision related to a claim arising in July 1914, and affirmed the decision of the Appellate Division rendered May 5, 1915. Matter of Claim of Schwab v. Emporium F. Co., 167 App. Div. 614, 153 N. Y. S. 234. Manifestly the law was a hindrance to those who, having lost a hand or other member, sought to become employees under the act, because the loss of the remaining member subjected the employer to the payment of a compensation substantially greater than it would in case the employee had the two members. After the decision of the Appellate Division, the Legislature by an amendment to subdivision 6 of section 15 enacted that: "An employee who is suffering from a previous disability shall not receive compensation for a later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability." Laws 1915, c. 615.'

"We have examined the workmen's compensation statutes of Minnesota and New York, and find each of them very similar to the Texas statutes, and find that they each contain provisions which have the same effect, except as to amount, as article 5246—18, and the part of article 5246—21 of the Texas statutes, both of which are copied above.

"On first impression it would seem that statutes similar to the particular article under consideration would work a great injustice upon those who have been so unfortunate as to lose an eye or a limb, but upon more mature consideration we can see what we consider to be good reasons for the enactment of such laws. If two men should apply to an industrial concern for employment, one of them having two eyes and the other only one, and the employer knew that if the man with two eyes lost one eye during the employment that he would be entitled to $1,500 compensation, and if the man with one eye lost it he would be entitled to $6,000 compensation, the employer, having to pay a higher rate of insurance for the additional hazards for the man with one eye, other things being equal, would, if he conducted his business on sensible business methods, give employment to the man with two eyes; and after a careful investigation of the legislation on, and judicial interpretation of the question, we have reached the conclusion that the Texas statute under discussion and similar statutes in other states were enacted for the benefit of persons as a class who enter employment with permanent partial disability rather than to their detriment. If it were not for such legislation, then all maimed and crippled laborers would be deprived of employment in all industrial plants where workmen's compensation insurance was carried, if those plants were conducted on strictly business principles. For, while the amount of insurance paid by the employer is, in a way, governed by his pay roll, yet, in determining the rate of insurance to be paid, the classes of risks insured must ultimately be taken into consideration. Certainly no reputable insurance concern would carry a $6,000 risk for the same premium that it would carry a $1,500 risk. In the last analysis, the character of hazard insured must be taken into consideration in determining the premium to be paid. It may be asserted that a one-eyed man, for the purpose of compensation insurance, is placed in the same class as to hazard, with the man with two eyes engaged in the same class of work, but it is the very provision of article 5246—24 that makes this possible, and if it were not for the provision of that article, the employee with permanent partial disability would of necessity be placed in a class where the hazard was greater and the rate of insurance correspondingly higher. If the rate of insurance to be paid is not to be affected by the hazard, we can see no reason for the enactment of article 5246—73, which is as follows:

" 'The board of directors shall determine hazards by classes, and fix the rates of premium which shall be applicable to the pay roll in each of such classes at the lowest possible rate consistent with the maintenance of solvency and the creation of adequate reserves and a reasonable surplus, and for such purpose may adopt a system of schedule and experience rating in such a manner as to take account of the peculiar hazard of each individual risk.'

(292 S.W.)

"If it may be said that one of this class, who becomes totally and permanently disabled upon receiving a second injury, is not fairly treated unless he receives compensation for total permanent disability, then it is better that the few who happen to second accidents should so suffer, rather than that the whole class should suffer by being denied employment.

[1] "Article 5246—24 is plain in its terms and, by giving it the interpretation above indicated, the seeming inconsistencies in article 5246—18 and the part of article 5246—21 quoted are harmonized, and each of said sections together with the section under consideration are upheld and given the effect on the whole law that we believe the Legislature intended they should have, and the precedents in other states are followed.

[2] "In the Court of Civil Appeals plaintiff in error raised the question that defendant in error did not plead any facts entitling it to invoke the provisions of article 5246—24. This question was not considered by the Court of Civil Appeals, but we may answer this contention by stating that plaintiff in error, in his petition for relief, stated all the facts above mentioned and discussed, and under these facts and our interpretation of the law he could not have received more than' he had already been paid by defendant in error, and it was therefore unnecessary for defendant in error to plead facts that had already been pleaded by plaintiff in error, nor to specially plead that particular provision of the law that would relieve it of liability for compensation for total permanent disability of plaintiff in error."

We adopt the foregoing opinion by Judge Chapman as our report, and recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J.   Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.