## MARYLAND CASUALTY CO. v. GUNTER.
### No. 11493.

Court of Civil Appeals of Texas. Galveston.

Dec. 17, 1942.

Sewell, Taylor, Morris & Connally, of Houston, for appellant.

Lewis Fisher and Sam Holliday, both of Houston, for appellee.

GRAVES, Justice.

This is a compensation suit. Sam E. Gunter is the employee, Maryland Casualty Company is the insurer, and the Texas Company is the employer.

Gunter, as plaintiff, filed suit against the Casualty Company, as defendant, for total and permanent disability as a result of injuries claimed to have been sustained on or about May 25, 1941, when a "Christmas Tree" (a 1,400-pound piece of metallic oilfield equipment), fell on him, less 17 monthly installments of compensation at $20 each paid him by it for such injuries immediately following the accident. The defendant alleged, both that whatever incapacity had been suffered by the plaintiff as a result of the injuries on May 25, 1941, had been cured, and, in any event, that it had been

solely the result of a pre-existing disease. Special issues were submitted to the jury, and, these having been answered favorably to the plaintiff, the trial court entered judgment in favor of the plaintiff for the maximum benefits under the Compensation Law; in due course of time, the defendant has legally and timely perfected its appeal.

Appellant's sole points for reversal are these:

"(1) It was error for the trial court to submit special issue No. 5 to the jury, inquiring whether such total incapacity of Sam E. Gunter 'began' or 'will begin', along with the instruction, 'Answer by stating the date, if any, otherwise "None"', over the timely objection of the defendant that such issue was duplicitous, in that it submitted two issues in one."

"2. The trial Court erred in submitting special issue No. 4 to the jury, inquiring whether the bodily injury, 'exclusive of any loss of vision he may have sustained', was the producing cause of any total incapacity to plaintiff; because same was subject to timely objection by defendant that there was no evidence of total incapacity resulting from injuries on May 25, 1941, 'exclusive of any loss of vision he may have sustained', and that the same was too general and was on the weight of the evidence, because it was likely to lead the jury to believe that the plaintiff was totally incapacitated, exclusive of any loss of vision he may have sustained."

■ Both these contentions, it is determined, should be overruled. Appellant supports the first of them, that No. 5 was duplicitous, with the citation of Traders & General Ins. Co. v. Shelton, Tex.Civ. App., 130 S.W.2d 903, claiming this cause to be analogous to that one, hence that it and the later case of United Employers Cas. Co. v. Oden, by the same Court, 150 S.W.2d 114, rule the one at bar.

The precise language of given-issue No. 5 here is:

"When do you find from a preponderance of the evidence that such total incapacity, if any, of Sam E. Gunter, began or will begin?

"Answer by stating the date, if any, otherwise 'None'."

Whereas the one submitted in the Shelton case was this:

"Has or will plaintiff, A. B. Shelton, suffer any partial incapacity to labor as a result of the injuries, if any, sustained on November 17, 1936? Answer 'Yes' or 'No'. If you find from a preponderance of the evidence that he has not or will not suffer any partial incapacity, let your answer be 'No', other wise you will answer 'Yes'."

This court has italicized the word "or" in the instruction appended by the trial court to the issue involved in the Shelton case, which instruction and disjunctive, so therein occurring, caused the Waco Court of Civil Appeals to sustain the objection there made that it was duplicitous, as appears from this portion of its opinion:

"In several other cases, issues similar to the one here under consideration, have been held not to submit to the jury two questions of fact in the same issue. Traders & General Insurance Co. v. Patterson, Tex.Civ. App., 123 S.W.2d 766; Fidelity & Casualty Co. of New York v. Branton, Tex.Civ.App., 70 S.W.2d 780; Maryland Casualty Co. v. Brown, Tex.Civ.App., 110 S.W.2d 130; Traders & General Insurance Co. v. Baker, Tex.Civ.App., 111 S.W.2d 837. However, in the cases cited, it should be noted that the issue was not followed with an explanation such as was given in this case. Here, the Court, by instructing the jury, 'If you find from a preponderance of the evidence that he has not or will not suffer any partial incapacity, let your answer be "No", otherwise you will answer "Yes", in effect, told the jury that if they found that the injured employee had not suffered any partial incapacity up to date, or if they found that he would not suffer any partial incapacity in the future, then, in either event, they should answer the question "No." '"

In other words, it seems plain that the instruction so given was alone the rationale for the holding that such issue was duplicitous, and not that the simple method followed here in this issue No. 5, of merely referring to a past and future time together in the same inquiry was erroneous or objectionable; indeed, that case and those like the one here involved were carefully distinguished by the Waco court in therein citing the Traders & General Ins. Co. v. Patterson case, Tex.Civ.App., 123 S.W.2d 766, along with others of its class, as being grounded on different facts from the Shelton case, in that they contained no such misleading instruction. There are a number of additional holdings to the same effect—that is, that it was not error, as was here done, to merely refer to both a past and future time in inquiring when the incapacity

appeared, but without adding a directive and misleading instruction thereto, as in the Shelton case; in fact, on states of fact not in legal effect different from those here obtaining, our authorities seem to have been of one voice in determining that such an issue is not duplicitous. Fidelity & Cas. Co. of N. Y. v. Branton, Tex.Civ.App., 70 S.W.2d 780, writ of error dismissed; Traders & General Ins. Co. v. Baker, Tex.Civ. App., 111 S.W.2d 837, writ of error dismissed; Traders & General Ins. Co. v. Patterson, Tex.Civ.App., 123 S.W. 766, writ of error dismissed, cited, as quoted, in Shelton case, supra; Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280; Maryland Cas. Co. v. Foote, Tex.Civ. App., 139 S.W.2d 602, writ of error refused; Traders & General Ins. Co. v. Wright, Tex.Civ.App., 144 S.W.2d 626, writ of error refused; Traders & General Ins. Co. v. Belcher, Tex.Civ.App., 152 S.W. 2d 525, writ of error refused, want of merit.

■ Neither does this court find special issue No. 4 to have been either too general, on the weight of the evidence, or to have lacked sufficient support therein, as urged by the appellant. That issue is as follows:

"Do you find from a preponderance of the evidence that such bodily injury, if any, exclusive of any loss of vision he may have sustained, if any, was a producing cause of any total incapacity, for any length of time, to Sam E. Gunter?

"Answer 'Yes' or 'No'."

■ In this court's opinion, instead of being too general, or on the weight of the evidence, that form of submission admirably complied with the rule on that subject recently re-stated by the Supreme Court in Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d at page 284, cited above concerning point 1, in this language.

"It is sufficient that the jury merely find that the employee sustained an accidental injury to his body. It must be remembered that the purpose of the trial is to ascertain whether the employee sustained an accidental injury to his body in the course of his employment and the extent of the incapacity, if any, resulting therefrom. Ordinarily it is not material what part of the body was injured, provided the body was actually injured and incapacity resulted therefrom."

■ It is true that in this instance the appellee alleged that he had lost all of the vision in his left eye and fifty per cent of it in his right eye from the accident; but, as the cited Boswell case and such others as Postal Mut. Indemnity Co. v. James, Tex. Civ.App., 154 S.W.2d 148, make plain, it is not necessary that an employee prove that he has sustained each and all of the injuries alleged in his petition, and here the evidence conclusively showed that the left eye was out to all intents and purposes before this accident, and that he had not lost more than fifty per cent of his sight in the right eye as the result of it.

■ So that, with his pleadings not in the way, the trial court was quite discriminating, as indicated, in the state of the evidence affecting his bodily injuries in other respects than as to his vision, in specifically eliminating from the jury's consideration in this issue any element as to lost vision he may or may not have sustained in either eye, so that they might be free to determine whether or not his bodily injuries otherwise from the accident had constituted the producing cause of any total incapacity to him.

In other words, the court evidently had in mind the fact that the Compensation Act itself, R.S. Article 8306, Part 1, Section 11 a(1), makes only the loss of vision in both eyes, not one only, constitute total and permanent incapacity; so that, under this undisputed evidence—with the appellee himself testifying that prior to this injury he had had no useful vision in his left eye at all, just a "spark"—it would have been error for the court to have permitted a confusion between injuries to other parts of his body with those to his eyes, since having but his right eye before, he could not have recovered under the law for total permanent disability, even had he proved entire loss of sight in his remaining eye as a result of the accident. It would still have been compensable only as for that specific loss, under Section 12 of the Act. Gilmore v. Lumbermens Reciprocal Ass'n, Tex.Com.App., 292 S.W. 204.

■ In this state of the record it is thought to be plain that what the jury found was that the appellee, as a result of the accident, had lost fifty per cent of the vision of his right eye, and, in addition, had received such other general injuries as totally and permanently disabled him. There remained, therefore, only the further

inquiry as to whether or not those findings had sufficient support in the evidence.

In that connection, this general summary of it upon that feature, made in the appellee's brief, which is found to be fully supported by the statement of facts, is quoted, with approval, as constituting a complete answer to that inquiry, to-wit:

"(1) Plaintiff was employed as a truck driver for The Texas Company on May 25, 1941, the day of the accident, doing general oil field hauling over a territory extending from Orange to Laredo, Texas.

"(2) He drove the truck himself.

"(3) The heavier stuff was loaded by winch, but he loaded and unloaded, by hand, smaller objects weighing from 50 to 100 pounds, sometimes going as high as 150 pounds.

"(4) This was done often, nearly every day.

"(5) He unloaded and carried and stacked, by hand, sometimes stacking 100 pound sacks 5 feet high and handling as much as 10,000 pounds of 100 pound sacks at a load.

"(6) Up to the day of the accident, he had no difficulty with this heavy work, and never missed a day from work.

"(7) He weighed 191 pounds at the time of the accident and 176 at the time of trial, practically a year later.

"(8) The Christmas tree that struck him when it fell and then fell upon him, weighed about 1400 pounds and was made of metal.

"(9) The Supply Company's employees were loading the Christmas tree with an overhead chain hoist and when it was almost loaded, it fell and hit him down, causing his head to strike the cement floor, and falling on him.

"(10) He was undoubtedly knocked unconscious and remained unconscious until he was taken to the hospital.

"(11) They had to take the Christmas tree off of him.

"(12) He remained in the hospital for three or four weeks, where he was in the care of defendant's physician.

"(13) He was hurt in the head, eye, nose, neck, back, right shoulder, right arm, right hand, and suffered intense pain; various bones in his back were broken, and he sustained severe injuries to the soft tissues of his back.

"(14) From the hospital he was taken home, put in bed for about ten days, and for about two months more spent most of the time in bed.

"(15) His back, neck, and head continued to pain him up to the time of the trial, and he has not been able to work since the accident.

"(16) He cannot bend over and cannot stand fully erect, because of pain; his back and head had not improved since he left the hospital.

"(17) Exercise and movement caused him pain in his head up to the time of the trial; and any movement, even a step, caused him pain in his back up until the time of the trial.

"(18) He could not bend over and pick up anything at the time of the trial.

"(19) If he tries to bend over, his back, where he was hit in the accident, hurts him—hurts his back to sit.

"(20) He has had only a four or five grade education, and was not prepared to do any work, except manual labor, and he was 45 years old at the time of trial.

"(21) At the time of trial, as a support for his back, he still wore a support, which had been provided by defendant's physician.

"(22) Dr. Edman A. Moers, who examined him and had treated him for some time after the Insurance Company doctor quit, testified, basing his testimony partly on the X-ray examination of Dr. McHenry, that the man would have pains for years if he tried to work or lift or drove a car, and that anything that required use of his back, he could not do; that he had not improved materially; that he had rigidity of the muscles, of the back, and his back is as stiff as a board. That this rigidity could not be simulated; that his back is stiff; that it caused severe pain if he tried to bend it; that trauma caused this condition of his back; and that the trauma of May 25, 1941, caused the rigidity of the muscles of his back. That the effects of the trauma in question would extend a long time. That the disability to the back is more or less permanent and that he would never be able to do manual work."

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.